George Teagarden Livestock Commissioner Kansas Animal Health Department 712 S. Kansas Avenue, Suite 4-B Topeka, Kansas 66603-3808
Dear Commissioner Teagarden:
As livestock commissioner you pose a number of questions concerning the Kansas animal health department's jurisdiction in relation to the conduct of local animal control officers and to city animal control ordinances.
The first issue you raise relates to certain small cities which enforce local animal control ordinances but do not have a pound or shelter to retain animals. You inform us that in such communities local law enforcement officers or animal control officers pick up or trap animals (primarily cats and dogs) found running at large and not posing a threat to humans, farm animals or property. You further inform us that the officers dispose of these animals in a variety of ways, from immediate placement to "dumping" them outside city limits to killing them by shooting, poisoning or drowning. In these situations you ask whether the livestock commissioner as head of the Kansas animal health department has jurisdiction pursuant to the Kansas pet animal act over the officer's actions after he or she takes possession of the animal.
The Kansas pet animal act consists of the following statutes and amendments thereto: K.S.A. 47-1701 through K.S.A. 47-1721, K.S.A.47-1723 through K.S.A. 47-1727, K.S.A. 47-1731, as amended by L. 1996, ch. 151, sections 6 through 27, and L. 1996, ch. 151, sections 1 through 5. The officers described fall within the act's definition of the term "animal control officer":
 "[A]ny person employed by, contracted with or appointed by the state, or any political subdivision thereof, for the purpose of aiding in the enforcement of this [pet animal] law, or any other law or ordinance relating to the licensing or permitting of animals, control of animals or seizure and impoundment of animals, and includes any state, county or municipal law enforcement officer, dog warden, constable or other employee, whose duties in whole or in part include assignments which involve the seizure or taking into custody of any animal." K.S.A. 1995 Supp. 47-1701(k), as amended by L. 1996, ch. 151, § 6(k).
Within the pet animal act, two statutes are applicable to animal control officers.
K.S.A. 47-1711, as amended by L. 1996, ch. 151, § 14, provides:
 "An animal control officer, upon taking custody of any animal in the course of such officer's official duties, shall immediately make a record which shall include the color, breed, sex, approximate weight and other description of the animal, the reason for seizure, the location of seizure, the owner's name and address, if known, the animal license number, and any other identification number. Complete information relating to the disposition of the animal shall be shown on the record; this shall be added immediately following the disposition of the animal."
K.S.A. 47-1718, as amended by L. 1996, ch. 151, § 18, provides.
 "No animal shall be euthanized by any animal control officer, licensee, permittee, officer of an animal shelter or officer of a pound by any means, method, agent or device, or in any way, except through the most current, approved euthanasia methods established by the American veterinary medical association panel on euthanasia."
Clearly an animal control officer is required to comply with statutory provisions regarding record-keeping and lawful methods of euthanasia. (The commissioner is in the process of adopting a regulation which incorporates by reference American veterinary medical association approved methods of euthanasia. Shooting and drowning animals is not an approved method of euthanasia.) If the commissioner has reason to believe that an animal control officer is not in compliance with either of these requirements, a civil and a criminal remedy are available. K.S.A. 47-1727, as amended by L. 1996, ch. 151, § 26, authorizes the commissioner to bring a court action to enjoin, restrain or prevent such person from continuing to violate the pet animal act. K.S.A. 47-1715, as amended by L. 1996, ch. 151, § 16, makes any violation of or failure to comply with any provision of the pet animal act a class A nonperson misdemeanor. While the commissioner does not have authority to initiate a criminal prosecution, the commissioner may refer the matter to the appropriate county or district attorney for prosecution.
In relation to your second set of issues, you inform us that the animal health department has received complaints regarding law enforcement officers shooting dogs for population control. Some of the complaints have come from persons in communities with animal control ordinances. One specific incident occurred in a small Kansas town which had adopted the following ordinance:
 "Section 9. Any dog or cat found running at large in any street, alley or in any public place within the city limits, and in whom ownership cannot be determined, shall be deemed a public nuisance and destroyed and properly disposed of. Should any dog or cat be suspected of suffering from rabies, it shall be held in confinement for at least 10 (ten) days and upon being found suffering from rabies, it shall be destroyed and buried at once."
In relation to this city ordinance, you ask whether the livestock commissioner has jurisdiction pursuant to the Kansas pet animal act to prohibit that city from enforcing its animal control ordinance.
The ordinance quoted does not appear on its face to conflict with the statutory requirements applicable to animal control officers, i.e. record-keeping as provided in K.S.A. 47-1711, as amended by L. 1996, ch. 151, § 14, and lawful methods of euthanasia as provided in K.S.A. 47-1718, as amended by L. 1996, ch. 151, § 18. However the method by which an animal control officer may "destroy" an animal pursuant to the ordinance must be in a manner approved by the American veterinary medical association panel on euthanasia. In addition, the animal control officer must maintain appropriate records concerning the animal. If a particular animal control officer is enforcing the city ordinance in a manner which is inconsistent with either the euthanasia statute or the record-keeping statute, as indicated above, the commissioner has authority to initiate a civil action to enjoin, restrain or prevent such person from continuing to act in violation of the statute. In addition, if the destruction of animals by a city's animal control officer in a manner not consistent with the euthanasia statute is the result of city policy, the commissioner could initiate the civil action against the city. [Livestock commissioner is authorized to bring injunctive action against any person
who appears to be violating pet animal act. K.S.A. 47-1727, as amended by L. 1996, ch. 151, § 26. For purposes of the pet animal act, "person" means "an individual, association, partnership, corporation or otherentity. K.S.A. 47-1701(s), as amended by L. 1996, ch. 151, § 6(s)].
You also inquire whether the city ordinance authorizing the destruction of an animal deemed a public nuisance conflicts with the Kansas statute which prohibits cruelty to animals. Among other prohibited conduct in relation to the treatment of animals, K.S.A. 21-4310, as amended by L. 1996, ch. 119, § 1, prohibits "intentionally killing . . . any animal." However, exceptions to this prohibition include "the humane killing of an animal which is diseased or disabled beyond recovery for any useful purpose" and the "killing, attempting to kill, trapping, catching or taking of any animal in accordance with the provisions of chapter 47 of the Kansas Statutes Annotated." The destruction of animals pursuant to the city ordinance must occur in a manner which is consistent with the provisions of the cruelty to animals statute. In our opinion "humane killing" of diseased or disabled animals means such animals should be destroyed in a manner which is consistent with the euthanasia statute, K.S.A. 47-1718, as amended by L. 1996, ch. 151, § 18. Likewise, any animal which is killed for population control purposes by an animal control officer must occur in a manner approved by the American veterinary medical association panel on euthanasia. Thus, in our opinion the city ordinance on its face does not conflict with the cruelty to animals statute. However, if an individual animal control officer destroys an animal in a manner inconsistent with the euthanasia statute, such officer could be prosecuted for cruelty to animals. In addition, as indicated above, the commissioner may initiate a court action to enjoin, restrain or prevent such officer from committing further violations of the euthanasia law.
In relation to your third issue, you inform us that many small communities do not have an animal control ordinance. In this situation you ask whether the livestock commissioner has jurisdiction pursuant to the pet animal act to prohibit these entities from shooting dogs found running at large when not posing a danger to livestock, property or humans. Our response to this question mirrors the conclusions reached in response to your second issue. An animal control officer who kills an animal in a manner which violates the euthanasia statute is subject to an injunctive action brought by the commissioner. If such an officer acts in accordance with city policy, the city is also subject to such an injunctive action.
In summary, an animal control officer is required to comply with statutory provisions regarding record-keeping and lawful methods of euthanasia. If the livestock commissioner has reason to believe that an animal control officer has violated either of these requirements, the commissioner may bring a court action to enjoin, restrain or prevent such person from continuing to violate the pet animal act. The commissioner may also refer such matter to the appropriate county or district attorney for criminal prosecution. In addition, if the destruction of animals by an animal control officer in a manner which violates the euthanasia statute is the result of city policy, the commissioner may initiate injunctive action against the city.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Camille Nohe Assistant Attorney General
CJS:JLM:CN:jm